# IN THE COURT
# OF CRIMINAL APPEALS OF THE STATE OF OKLAHOMA

FILED
IN COURT OF CRIMINAL APPEALS
STATE OF OKLAHOMA

DEC 18 2017

ADAM CLAYTON ZILM, )
)
  *Appellant*, )
)
v. ) Case No.: F-2017-69
)
) District Court of Tulsa County
) Case No.    CF-2012-3037
THE STATE OF OKLAHOMA, )
)
  *Appellee*. )

## MOTION OF THE APPELLANT
## TO SUPPLEMENT THE RECORD ON APPEAL AND FOR
## EVIDENTIARY HEARING ON HIS CLAIM OF INEFFECTIVE
## ASSISTANCE OF TRIAL COUNSEL

Appellant, Adam Clayton Zilm, by and through the undersigned counsel, moves to supplement the record on appeal with the attached materials pursuant to Rule 3.11(B)(3)(b), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2015), and also moves for an evidentiary hearing on his Sixth Amendment claim of ineffective assistance of trial counsel as outlined in his Brief in Chief. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *accord Grant v. State*, 2004 OK CR 24, ¶ 3, 95 P.3d 178.

EXHIBIT 6

The attached supporting affidavits reflect the deficient performance of defense counsel in presenting a vigorous defense for Zilm at trial.

Specifically, the attached affidavit of the Appellant, Adam Clayton Zilm, shows that he was coerced into not calling witnesses for the defense (three of them: his mother Mary Zilm, his fiancee Kristi Shaneck, and P.A., the minor daughter of Kristi Shaneck) because of the statements by prosecutor Sarah McAmis which would have been understood by a person in Zilm's position as being threats to charge his witnesses with perjury and to re-open the juvenile case to change the custody situation of P.A.

Mary Zilm asserts that she was present when the police interrogated Zilm at her home and that she overheard the conversation, including Zilm ask initially if he needed an attorney, to which the detectives glanced at each other then back at Zilm and said, "Do you need one?" And the other officer said, "No, we just want to ask you some questions."

P.A. has provided a statement to the undersigned counsel, who has attached it to his affidavit, in which P.A. avers that she was ready and willing to testify on behalf of Zilm as a character witness, and that she supports him.

These documents support the claim raised in Appellant's brief that trial counsel was ineffective under the Sixth Amendment.

WHEREFORE, Appellant moves this Court for an Order: 1) SUPPLEMENTING the record on appeal with the attached affidavits; and 2) REMANDING this matter to the District Court for an EVIDENTIARY HEARING on his claims of ineffective assistance of trial counsel; or in the alternative, to the extent that the State does not contest Appellant's evidentiary assertions, to reverse and remand this case for a new trial.

DATED this 18th day of December, 2017.

Respectfully submitted,

_/s/ James L. Hankins_
James L. Hankins, OBA #15506
TIMBERBROOKE BUSINESS CENTER
929 N.W. 164th St.
Edmond, Oklahoma 73013
Phone:   405.753.4150
Fax:     405.445.4956
e-mail:  jameshankins@ocdw.com

COUNSEL FOR APPELLANT

## CERTIFICATE OF SERVICE

I certify that on this 18th day of December, 2017, a true and correct copy of the foregoing was delivered to the Clerk of this Court for transmittal to the Attorney General of the State of Oklahoma.

_/s/ James L. Hankins_
JAMES L. HANKINS, OBA #15506

## AFFIDAVIT OF ADAM CLAYTON ZILM

STATE OF OKLAHOMA    )
                     )  ss:
COUNTY OF BECKHAM    )

I, Adam Clayton Zilm, being of lawful age and having legal capacity to make this affidavit, hereby state under oath as follows:

1. My name is Adam Clayton Zilm, and I am the Defendant in a case styled *State of Oklahoma v. Adam Clayton Zilm*, No. F-2012-3037, filed in the district court of Tulsa County.

2. My case was tried to a jury.

3. In my defense, I had several witnesses that I wished to call before the jury, but I chose to not call them, and I instructed my counsel to not call them, because the prosecutor had indicated that she would file perjury charges against my witnesses and seek to take away the children of my fiancee.

4. It was this fear of retaliation by the prosecutor that caused me to refrain from calling witnesses who were close to me and who could face legal consequences for testifying in my defense.

5. First, I did not allow my mother, Mary Zilm, to testify because of fear

that the prosecutor would retaliate and file perjury charges against her.

6. Mary Zilm was ready, willing and able to testify for the defense that during my interview with the police, which took place inside her home with her and my father present, I had asked the detectives if I needed an attorney and was told by Det. Smith, "No, we just want to ask a few questions"; and by Det. Hodges, "I don't know, do you?"

7. I believe that agents for the State, most likely the Detectives who interviewed me, deleted from the recording the part of the conversation about me asking for an attorney, as well as the Detective telling me that I did not need one.

8. In addition to asking about an attorney, Mary Zilm would also testify that the conversation about an attorney was removed from or not present on the recording, which was a copy, used by the prosecution.

9. Second, I decided to not allow my attorney to call as a witness P.A., the 16-year-old daughter of my fiancee, to testify on my behalf at trial because I understood that the prosecutor, Sara McAmis threatened to file perjury charges on her if there were any inconsistencies with her testimony.

10. I did not want to subject P.A., whom I considered my child, to charges

of perjury which would drastically alter her future.

11. P.A. was ready and willing to testify to my character as a father and a person, and of how I interacted with the children in a responsible, normal fashion; nor did P.A. ever feel uncomfortable around me and I never touched her in any inappropriate manner.

12. Third, my fiancee, Kristi Shaneck, the alleged victim's mother in my case, did not testify on my behalf because of her fear of losing the children.

13. Kristi Shaneck was ready, willing and able to testify for the defense that I had confided in her about a leakage problem I was having since taking a prostate health supplement. The conversation took place approximately one week before the alleged incident.

14. During the trial, the prosecutor alluded to having the children taken away from Kristi in a statement to the Court about having Judge Fransein take another look at the case and re-open it (the custody case).

15. I feel that my defense efforts to have my family testify in my behalf were interfered with by threats of legal action from the prosecutor, and I considered these threats credible and therefore instructed my attorney to not call these witnesses for the defense out of fear of retaliation.

Further affiant sayeth naught.

_____
ADAM CLAYTON ZILM

Subscribed and sworn to before me this 15th day of December, 2017.

_____
Notary Public

(Seal)

My Commission Expires: 4/20/2019

Commission No: 03004455

## AFFIDAVIT OF MARY ZILM

**STATE OF OKLAHOMA** )
                      ) ss:
**COUNTY OF TULSA**   )

I, May Zilm, being of lawful age and having legal capacity to make this affidavit, hereby state under oath as follows:

1. My name is Mary Zilm, and I am the mother of Adam Clayton Zilm, who is the Defendant in a case styled *State of Oklahoma v. Adam Clayton Zilm*, No. F-2012-3037, filed in the district court of Tulsa County.

2. On or about June, 2012, three police officers entered my home, two plainclothes Detectives and one uniformed officer.

3. They asked to speak to our son, Adam. Adam had just arrived home a little earlier. The two Detectives sat down with Adam and me in the living room, while the uniformed officer stood at the front doorway.

4. They asked Adam if he knew why they were there. Adam replied, "not really."

5. Adam then asked the two Detectives sitting with him, "Do I need an attorney?" The two officers then glanced at each other, then back at

Adam, and one said, "Do you need one?" The other officer said, "No, we just want to ask you some questions."

6. I then asked the Detective in charge if I could stay in the room. He told me no, and that if Adam wanted me to know what they talked about then he would tell me.

7. I then walked to the kitchen of my home in response to the request of the Detective.

8. The Detectives then proceeded to question Adam about a massage he had give to K.A. and they tried to put words in his mouth that he had done something wrong. Adam tried to show them exactly what he had done but they continued to insist that he must have done something bad.

9. Adam told them repeatedly that he did not.

10. They told Adam that will find DNA on her and that they needed his DNA sample.

11. Adam replied that he needed to ask his father if that was OK. Adam left the room and spoke with his father, after which Adam went back into the room and told the officers, "I want an attorney."

12. I was present and heard these conversations, which are accurate to the best of my recollection, and I was willing and able to testify at trial on

Adam's behalf had I been called to do so.

Further affiant sayeth naught.

_____
MARY ZILM

Subscribed and sworn to before me this 15th day of December, 2017.

_____
Notary Public

(Seal)
MELISSA MENDY
Notary Public – State of Oklahoma
Commission Number 13010606
My Commission Expires Nov 18, 2021

My Commission Expires:   11-18-21

## AFFIDAVIT OF KRISTI SHANECK

STATE OF OKLAHOMA   )
                    )   ss:
COUNTY OF TULSA     )

I, Kristi Shaneck, being of lawful age and having legal capacity to make this affidavit, hereby state under oath as follows:

1. My name is Kristi Shaneck and I am the mother of K.A., the minor complaining witness in a case styled *State of Oklahoma v. Adam Clayton Zilm*, No. F-2012-3037, filed in the district court of Tulsa County.

2. The Defendant, Adam Zilm has always been a great and supportive father to the children, they love him and he has always loved them as his own. Adam's character is very high and support him fully.

3. In addition, in the days leading up to the alleged criminal conduct, Adam had been taking some kind of new vitamins or medication that caused him to have a "leakage problem" from his penis. He confided this to me prior to the alleged criminal incident in this case.

4. I was willing and able to testify on Adam's behalf at his trial, as to his high character and his medical problem, but I did not do so because I

Page 1 of 2

was in fear of retaliation from the prosecutor in this case. I did not trust her and felt that she would attempt to take away my children if I helped Adam.

Further affiant sayeth naught.

*Kristi Shaneck*
KRISTI SHANECK

Subscribed and sworn to before me this 15th day of December, 2017.

OFFICIAL SEAL
KATHY KING
NOTARY PUBLIC STATE OF OKLAHOMA
Commission # 17009171
My Commission Expires 10-03-2021
(Seal)

*Kathy King*
Notary Public

My Commission Expires: 10-03-2021

Page 2 of 2

## AFFIDAVIT OF JAMES L. HANKINS

**STATE OF OKLAHOMA** )
                                ) ss:
**COUNTY OF OKLAHOMA** )

I, James L. Hankins, being of lawful age and having legal capacity to make this affidavit, hereby state under oath as follows:

1. My name is James L. Hankins, and I am a member of the Bar of the State of Oklahoma and I am counsel of record for Adam Clayton Zilm, who is the Defendant in a case styled *State of Oklahoma v. Adam Clayton Zilm*, No. F-2012-3037, filed in the district court of Tulsa County, which is currently on appeal to the Oklahoma Court of Criminal Appeals.

2. With the knowledge and consent of Kristi Alvarez, mother of P.A., a minor who is the older sister of K.A. the complaining witness in this case, I have obtained a statement from P.A. which is attached, outlining her thoughts on Zilm and what she would have testified to if called at trial.

3. I have opted to provide her statement in this manner instead of obtaining an affidavit from P.A. because she is a minor and in my judgment is it

is more appropriate to present her statement to the Court in this manner.

Further affiant sayeth naught.

_____
JAMES L. HANKINS

Subscribed and sworn to before me this 18th day of December, 2017.



_____
Notary Public

(Seal)

My Commission Expires:  1/20/19

## STATEMENT OF P.A.

My name is P.A., and I am Adam Zilm's daughter.

1. I was going to testify to my Dad's character when the trial was going on. Alan Smallwood (dad's attorney) was going to ask me questions about our relationship and who he is to me. He is a great Dad.

2. He has raised me into the person I am today. He has taught me so much throughout my life including life lessons, how to throw a ball, how to do great in school and has always helped me with any school work I needed help with, how to clean up after myself, how to be respectful, and how to give love and receive love. He has always encouraged me to do my best.

3. He has been there for me through everything. Anytime I needed to talk to someone he was there. He is the person I run to for everything. I trust him with everything I have. He is my goto person. I can tell him anything and not be afraid to talk to him about it. He has always been my shoulder to cry on when I'm sad, he knows exactly what to say to make me feel better.

4. He knows me better than almost anyone. He is my dad & I could not ask for a better dad I would not trade him for the world. I didn't end up getting to say any of this because the DA threatened to press perjury charges on me if I said

anything different from when I was younger when this all started. I still wanted to testify but my dad didn't want me to for my safety. I was so upset and angry that I couldn't testify to my Dad's character because I know if they knew what kind of dad he was and what kind of person he really is to me then the jury would see the real him and that it could've made a difference in the case.

5. I don't' want people getting the wrong image of him and that's all that's out right now because of all the nonsense and stupidity of the DA and other people who were involved in all these lies and games. It hurts me that people could do such a cruel thing. This has been the worst going through all this, I always think to myself why did it have to be my family? I have lost so much time with my Dad and the ability to have a "normal" life. I hope this give you some insight on who he is to me and how this situation has impacted me personally, my feelings, and thoughts.