

RECEIVED

APR 0 9 201

ATTORNEY GENERAL

# IN THE COURT
## OF CRIMINAL APPEALS OF THE STATE OF OKLAHOMA

FILED
IN COURT OF CRIMINAL APPEALS
STATE OF OKLAHOMA

APR - 9 2018

|  |  |  |
|---|---|---|
| ADAM CLAYTON ZILM, | ) |  |
|  | ) |  |
| *Appellant,* | ) |  |
|  | ) |  |
| *vs.* | ) | Case No.:    F-2017-69 |
|  | ) |  |
| THE STATE OF OKLAHOMA, | ) | District Court of Tulsa County |
|  | ) | Case No.:    CF-2012-3037 |
| *Appellee.* | ) |  |

## REPLY BRIEF FOR AND ON
## BEHALF OF APPELLANT ADAM CLAYTON ZILM

*Submitted by*:

James L. Hankins, OBA #15506
TIMBERBROOKE BUSINESS CENTER
929 N.W. 164th St.
Edmond, Oklahoma 73013
Phone:       405.753.4150
Fax:           405.445.4956
E-mail:       jameshankins@ocdw.com

*Counsel for Appellant*

EXHIBIT 8

## <u>TABLE OF CONTENTS</u>

REPLY TO PROPOSITION I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

REPLY TO PROPOSITION II . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

REPLY TO PROPOSITION III . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

REPLY TO PROPOSITION IV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

REPLY TO PROPOSITION V . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

REPLY TO PROPOSITION VI . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## TABLE OF AUTHORITIES

*Bosse v. State,*
     2017 OK CR 10, 400 P.3d 834 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Ellis v. State,*
     1992 OK CR 45, 867 P.2d 1289 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Harrington v. Richter,*
     562 U.S. 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011) . . . . . . . . . . . . . . . . . . . . . 8

*Simpson v. State,*
     2010 OK CR 6, 230 P.3d 888 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Strickland v. Washington,*
     466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) . . . . . . . . . . . . . . . . . . . . 9

*Van White v. State,*
     1999 OK CR 10, 990 P.2d 253 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

# IN THE COURT
## OF CRIMINAL APPEALS OF THE STATE OF OKLAHOMA

| | | |
|---|---|---|
| ADAM CLAYTON ZILM, | ) | |
| | ) | |
| *Appellant,* | ) | |
| | ) | |
| vs. | ) | Case No.:    F-2017-69 |
| | ) | |
| THE STATE OF OKLAHOMA, | ) | District Court of Tulsa County |
| | ) | Case No.:    CF-2012-3037 |
| *Appellee.* | ) | |

## REPLY BRIEF OF APPELLANT

Appellant Adam Clayton Zilm, by and through the undersigned counsel, hereby replies to the State as follows:

## REPLY TO PROPOSITION I

The State asserts that there is "no evidence" that DHS worker Lauren Hall, forensic examiner Amy Howard, juvenile case agent Lori Hannagan, and prosecutor Sarah McAmis pressured or coerced K.A. to testify a certain way; and that Zilm has "presented no credible evidence to show K.A. perjured herself at his first preliminary hearing and that the prosecutor knew, or should have known, that her testimony was perjured." State Brief at 7-8. The State is incorrect. The evidence presented by Zilm is largely ignored by the State in its response, and it is uncomfortable to discuss it, but such evidence exists.

Page 1 of 11

First, incredibly, the State asserts that K.A.'s original testimony at the first preliminary hearing was credible and believable, and that there is no reason to believe that the prosecutor knew or should have known about coercion. State Brief at 8-9. The State makes this claim despite a *written Order and findings of fact by Judge Glassco* that State agents had exercised unreasonable influence on K.A. to secure her testimony at the first preliminary examination to which she had since recanted repeatedly. O.R. 339. The State does not mention this uncomfortable finding by Judge Glassco at all.

There are not only specific findings of coercion by Judge Glassco, there is a tape recording made by K.A. herself of DHS worker Lauren Hall telling K.A. that no one believes her recantation because the DNA evidence supported the first statement, which was a lie and a lie that Hall knew or should have known to be false; and testimony from K.A. herself that she only testified that way at the first preliminary examination because forensic interviewer Amy Howard told her that if she did not, then she might not be given back to her mother. *See* Defendant's Exhibit #1; O.R. 172-73; 304; 338; Tr. IV 17-23.

The evidence that Amy Howard and Lauren Hall coerced K.A. to stick with her original accusation at the preliminary examination thus consists of a judicial finding and written Order that this was the case, a recording of Lauren Hall catching her red-handed, and testimony and statements of K.A. herself.

As to Sarah McAmis, the State asserts that the claim of Zilm "would require this Court to believe that an experienced prosecutor would risk her career, law license and

possible prison time, to conspire with the other alleged state actors to suborn perjury." State Response at 9. Zilm does not speculate, as this Court surely does not, about what prosecutors or anyone else might risk or do; rather, Zilm presents facts in the record which speak for themselves.

The facts in the record are that K.A. herself wished to speak at the reliability hearing, Prosecutor McAmis objected to that, citing "a stack of case law to argue" against K.A. testifying when this Court's published opinions allow it (*see F.D.W. v. State*, 2003 OK CR 23, ¶ 5, 80 P.3d 503, 504), the trial court allowed K.A. to testify, and K.A. then proceeded to testify under oath how Prosecutor McAmis told her that if she stuck to her original accusation and dropped the recantation then K.A. could go back to her mom, and that Prosecutor McAmis knew that she had recanted; and K.A. also testified that a juvenile case agent named Lori Hannagan told K.A. to just blame the recantation on her mother, implying that K.A.'s mother made her recant, a fact flatly denied by K.A. who "just sat there" after listening to Hannagan try to get her to lie . Tr. 09/09/2014 at 4, 7, 118, 122-24, 127-28.

In cannot be forgotten that K.A. testified to these things against Prosecutor McAmis and Lori Hannagan in response to *questions posed to her by the trial court*, not defense counsel. *Id.*

So, the facts show that Prosecutor McAmis claimed to have "a stack of case law" on the issue of K.A. testifying at the reliability hearing when the law is the opposite of that, Prosecutor McAmis attempted to prevent K.A. from testifying at the reliability hearing, and

when the trial court disagreed and allowed K.A. to testify, she accused Prosecutor McAmis and Lori Hannagan of coercion of a minor witness to perjure herself.

Remember that Prosecutor McAmis asserted that K.A. was a credible witness at least at the first preliminary examination—enough so to rely on her statements to put Zilm in prison for 36 years; yet, when K.A. accuses McAmis of impropriety, Hannagan of trying to blame the recantation on her mother, Hall of lying on tape about the DNA, and Amy Howard telling her to not recant so she can go back with her mother—the State all of a sudden seems to find K.A. not credible.[1]

The State cannot have it both ways.

Finally, after chastising Zilm for presenting no evidence of coercion and speculating, the State then proceeds to speculate that it must have been K.A.'s mother and Zilm who "brought pressure" on K.A. to recant her allegations. State Brief at 13. The State offers absolutely no factual basis for such an assertion, and overlooks or ignores the fact that K.A. recanted almost immediately after the incident—within a day or two—and without any prompting by Zilm. O.R. 304; 152 (sworn statement of K.A.).

---

[1]    The State chides Zilm for citing to his own Motion to Dismiss regarding the report made by DHS worker Lori Hannagan and the fact that Hannagan noted in the DHS case that K.A. had recanted. State Brief at 10 (noting "somewhat circular logic" in Zilm citing to his own motion). However, counsel for Zilm could not have attached a copy of the DHS report by Hannagan because he was specifically ordered by Judge Glassco and Judge Fransein (the juvenile court judge) to review the records and take notes, but was specifically forbidden to copy any documents from the juvenile file. Tr. IV 36-37. This is why defense counsel made a note of what he saw and copied into a motion. There is nothing circular about it because the State prevented counsel from producing the document in support because it is a juvenile record. One would have thought that the State would have informed this Court of this salient fact.

In sum, there is no evidence that Zilm or K.A.'s mother attempted to influence K.A.'s

testimony; but, there is evidence that Prosecutor McAmis did, that DHS worker Lauren Hall

did, that forensic interviewer Amy Howard did, and that juvenile case agent Lori Hannagan

did–all in the form of sworn testimony from K.A. herself (elicited by Judge Glassco, not

defense counsel), audiotape recording in the case of Lauren Hall, a judicial finding by Judge

Glassco of coercion by State actors, and DHS/juvenile records that show K.A. recanted.

## REPLY TO PROPOSITION II

As outlined in Zilm's Brief-in-Chief, the prosecutor committed four other instances

of misconduct that must result in reversible error:  1) she threatened defense witnesses with

perjury or to re-open the juvenile case if they testified; 2) she accused defense counsel of

orchestrating the recording of Lauren Hall's false DNA comment to K.A.; 3) she made

improper argument to the jury that Zilm should be punished for exercising his right to a jury

trial; and 4) she engaged in courtroom histrionics during closing argument, which seems to

be a pattern with this particular prosecutor.

The State asserts that the prosecutor did nothing wrong, and that her statements and

arguments were proper.  State Brief at 15-16.  The State is incorrect.

Concerning the statements made by the prosecutor about re-opening the juvenile case

(with the implied threat of altering custody) and possible perjury against defense witness

P.A., this Court can look at those statements and see if they were made by a responsible

prosecutor–and recall that Zilm was sitting right there listening.  She clearly intended to chill

the resolve of Zilm to call these witnesses, and it worked.

As to the statement by the prosecutor insinuating that defense counsel orchestrated K.A. recording Lauren Hall trying to manipulate her testimony, the State has come up with a theory that it was somehow invited error. State Response at 20. This was not invited error. Invited error is when the accused or counsel seeks an appellate remedy for actions or argument he approved of at trial. *See Ellis v. State*, 1992 OK CR 45, ¶ 28, 867 P.2d 1289, 1299 (error invited by defense counsel cannot serve as basis for reversal because defendant cannot invite error and then seek to profit from it).

Here, defense counsel did not put in issue or suggest that K.A. was coached or coerced to record Lauren Hall; he simply observed that it took courage for K.A. to do it. The prosecutor responded by insinuating that defense counsel put her up to it. This comment was not invited by the defense; rather, it was improper argument by the prosecutor because there is *no evidence that it is true*, which is also why it is not fair comment on the trial evidence.

As to the prosecutor's improper comment on Zilm exercising his right to trial ("It's wrong that you [Zilm] violated a little girl and then put her through the next four years to get to this day." Tr. V 55), and her courtroom histrionics (the trial court instructed Ms. McAmis: "Counsel, I'll ask you to refrain from histrionics." Tr. V 48), Zilm will leave it in this Court's hands to review those comments and see that it was misconduct; and to recognize, as Zilm has pointed out in his Brief-in-Chief (pages 36-37), that this prosecutor continues to engage in this type of conduct.

## REPLY TO PROPOSITION III

As the Court will recall, at the reliability hearing, Judge Glassco ruled that hearsay statements made by K.A. to the neighbor (Sanford) and to forensic interviewer Amy Howard were *unreliable and therefore inadmissible*. Tr. 09/12/2014 at 16-18. This Court upheld this ruling when the State appealed. O.R. 511. In addition, the testimony by K.A. at the first preliminary examination was found to be coerced by State agents by Judge Glassco, and therefore a legal nullity. It is odd then, that the State was able to introduce all of these hearsay statements to the jury at trial.

The State argues that admission of these statements was not an abuse of discretion or were otherwise admissible. State Brief at 25-26. Zilm has outlined the reasons why they were not admissible, and here will simply underscore the primary difference between this case and the cases cited by the State, namely that here we have a pre-trial reliability hearing where the trial judge ruled that her hearsay statements were not reliable, and we also have an orchestrated effort by the prosecutor and three other state officials to pressure and coerce K.A. into changing her story. This changes things, particularly the quality of the hearsay statements made by K.A. and makes them not only unreliable, but legally inadmissible.

## REPLY TO PROPOSITION IV

During the interview, Zilm repeatedly denied sexually abusing K.A., but he did make statements to police in which he admitted to giving K.A. the massage, but denied intentionally touching K.A. inappropriately. *See* State's Exhibit #1 (Q. She's stating that you

put oil on her vagina and her butt, and that you tried to put your penis in her vagina. A. I didn't do that. Q. And then, when that didn't work, you put it in her butt. A. I didn't do that.)

Contrary to the conclusion of the trial court, and to the assertion of the State in its Brief (pages 33-34), Zilm was subject to the functional equivalent of an arrest during the time that he was questioned, this Court must find that he was in custody for *Miranda* purposes, and therefore suppress his statements because *Miranda* warnings were not given.

Voluntariness of a confession or incriminating statements is judged from the totality of the circumstances, including the characteristics of the accused and the details of the interrogation. *Van White v. State,* 1999 OK CR 10, ¶¶ 45, 990 P.2d 253, 267. Here, the details show that, although Zilm was not physically restrained, he was subjected to the functional equivalent of an arrest and not being free to leave.

## REPLY TO PROPOSITION V

Zilm has raised the issue of ineffective assistance of counsel, citing several examples and seeking to supplement the record via Rule 3.11, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2015).

The State asserts that the standard for prejudice is whether there is a "substantial" likelihood of a different result. State Brief at 46 (*citing Harrington v. Richter*, 562 U.S. 86, 112, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011)). This is incorrect.

*Harrington* was a federal habeas case, not a direct appeal. In a direct appeal, such as

the one here, the standard under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), is an objective one in which this Court asks whether Zilm has demonstrated a *reasonable probability* that, absent counsel's deficient performance, the outcome of the trial would have been different. *See Bosse v. State*, 2017 OK CR 10, ¶ 91, 400 P.3d 834.

The legal standards sometimes make a difference, and they might in this case. The State seems to advocate a higher standard for Zilm to meet on his IAC claim, a "substantial likelihood" of a different result as opposed to merely a reasonable probability of one. To the extent that the State is asserting that *Harrington* changed the legal standard for IAC claims under *Strickland*, Zilm contests this and asserts that *Strickland* has not been changed or modified in this manner; and that under the proper and applicable *Strickland* standard, there is a reasonable probability that, but for counsel's errors, the result of Zilm's case would have been different.

## REPLY TO PROPOSITION VI

The State asserts that there are no errors to accumulate, therefore Zilm's assertion of cumulative error must fail. State Brief at 48. The State is incorrect.

As Zilm outlined in his Brief-in-Chief, this Court reviews claims of cumulative error as a question of law *de novo*. *See Simpson v. State*, 2010 OK CR 6, ¶ 55, 230 P.3d 888.

Zilm has shown that his trial was replete with reversible error, starting at the very beginning with four State actors–including the prosecutor–lying and coercing the minor complaining witness into testifying falsely in court, with a prosecutor who threatened defense

witnesses with perjury and custody challenges if they testified, accused defense counsel during closing arguments of manipulating K.A. into recording Lauren Hall, commented improperly on Zilm's right to have a jury trial as continued harassment of K.A., her continued courtroom histrionics for which she has been chastised by this Court on several occasions, the trial court allowing "unreliable" hearsay statements of K.A. under the guise of hearsay exceptions, denial of suppression of his statements to detectives during the home interview, and ineffective assistance of counsel in failing to develop the record on how the prosecutor chilled the defense by threatening defense witnesses with perjury and custody changes.

These errors are all individually reversible, and combined form a cumulative prejudicial effect that must result in reversal.

## CONCLUSION

Based upon the foregoing argument and authority, Zilm requests that this Court reverse the judgment of the district court, vacate his conviction and sentence, and remand this case for a new trial.

DATED this 9th day of April, 2018.

Respectfully submitted,

James L. Hankins, OBA #15506
TIMBERBROOKE BUSINESS CENTER
929 N.W. 164th St.
Edmond, OK 73013

Page 10 of 11

Phone:       405.753.4150
Fax:         405.445.4956
E-mail:      jameshankins@ocdw.com

*COUNSEL FOR APPELLANT*

### CERTIFICATE OF SERVICE

I certify that on this 9th day of April, 2018, a true and correct copy of the foregoing was delivered to the Clerk of this Court for transmittal to the Attorney General of the State of Oklahoma.

James L. Hankins, OBA #15506