# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ADAM CLAYTON ZILM, | ) |
| | ) |
| *Petitioner*, | ) |
| | ) |
| v. | ) Case No.: 20-cv-509-CVE-JFJ |
| | ) |
| SCOTT CROW, Warden, | ) |
| | ) |
| *Respondent*. | ) |

# REPLY BRIEF OF PETITIONER

*Submitted by*

James L. Hankins, OBA# 15506
MON ABRI BUSINESS CENTER
2524 N. Broadway
Edmond, Oklahoma  73034
Telephone:  (405) 753-4150
Facsimile:   (405) 445-4956
E-mail:       jameshankins@ocdw.com

*Counsel for Petitioner*

## **TABLE OF CONTENTS**

REPLY TO GROUND I

FOUR STATE AGENTS, INCLUDING THE PROSECUTOR IN THIS CASE, COERCED AND LIED TO THE MINOR COMPLAINING WITNESS IN ORDER TO INFLUENCE HER TO TESTIFY FALSELY AGAINST ZILM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

# **TABLE OF AUTHORITIES**

*Long v. Pfister*,
    874 F.3d 544 (7th Cir. 2017) (*en banc*). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Mooney v. Holohan*,
    294 U.S. 103 (1935). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Napue v. Illinois*,
    360 U.S. 264 (1959). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Pyle v. Kansas*,
    317 U.S. 213 (1942). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Smith v. Phillips*,
    455 U.S. 209 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Agurs*,
    427 U.S. 97 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Crockett*,
    435 F.3d 1305 (10th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ADAM CLAYTON ZILM, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No.: 20-cv-509-CVE-JFJ |
| | ) | |
| SCOTT CROW, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

**REPLY BRIEF OF PETITION**

Petitioner, Adam Clayton Zilm, hereby replies to the State as follows:

**REPLY TO GROUND I**

**FOUR STATE AGENTS, INCLUDING THE PROSECUTOR IN THIS CASE, COERCED AND LIED TO THE MINOR COMPLAINING WITNESS IN ORDER TO INFLUENCE HER TO TESTIFY FALSELY AGAINST ZILM.**

The State asserts that the actions of the State actors in this case in coercing the minor complaining witness to lie do not fall within the purview of *Napue v. Illinois*, 360 U.S. 264 (1959), or alternatively that if they did then the rejection of the claim by the OCCA was not unreasonable. State Response at 13. The State is incorrect as to both assertions.

The record shows clearly that, as Zilm asserted in the state courts, four state actors, including the prosecutor Sarah McAmis, coerced a minor complaining witness into testifying falsely at the first preliminary examination; and thereafter pressured her to lie about the veracity of her recantation.

The State simply denied this occurred in the courts below, and continues to do so in this Court, despite the record to the contrary supported by the minor herself. State Response at 22 ("The only potentially false testimony introduced at trial was that Petitioner penetrated K.A.'s anus with his penis.")

The State then proceeds to micro-analyze *Napue* and imagines that there are looming unanswered constitutional questions emanating from it, then tries to pigeon-hole the claim raised by Zilm as one of those unanswered questions. State Response at 19-23. The State's effort fails because it overlooks the forest for the trees.

First principles are involved here.

*Napue* involved a prosecutor in a murder trial who elicited testimony from a star witness who responded that the prosecutor had made no promises of consideration for his testimony, when in fact the prosecutor did this very thing. The Supreme Court obviously found this conduct by the State to be outlandish and unconstitutional under the Fourteenth Amendment, holding that the first principle that the State may not knowingly use false testimony to obtain a tainted conviction does

2

not cease to apply merely because the false testimony goes only to the credibility of a witness. *Napue*, 360 U.S. at 269.

*Napue* was thus an extension of clearly established Supreme Court precedent that the State may not obtain a criminal conviction using false testimony known by the State to be false. *Napue*, 360 U.S. at 269 (*citing Mooney v. Holohan*, 294 U.S. 103 (1935), and *Pyle v. Kansas*, 317 U.S. 213 (1942)).

The State's effort to create nuance as to what *Napue*, *Mooney* and *Pyle* actual hold is not persuasive. For example, the case of *Long v. Pfister*, 874 F.3d 544 (7th Cir. 2017) (*en banc*), cited by the State at page 20, bears no resemblance to what the State actors did in Zilm's case.

*Long* involved the opposite situation faced by Zilm. In *Long*, the witness claimed to be coerced by police, but testified for the State that Long was the shooter. The defense cross-examined the witness on the alleged coercion. In Zilm's case, the witness testified that Zilm was innocent, but the State used her prior preliminary hearing testimony to impeach, which the witness claimed was coerced.

The difference is that in Zilm's case, the state trial judge found coercion and rendered the impeach testimony used by the State at trial (which was the preliminary hearing testimony of K.A.) a nullity because the testimony was unreliable–because it had bee coerced.

3

Thus, where *Long* involved a claim of coercion to be sorted out by the jury as a matter of fact, Zilm's case involved a judicial determination by the state trial court that K.A.'s testimony had been coerced, was therefore unreliable, and not to be used–and it ended up being used by the State anyway. This conduct would seem to fall within the rule of *Napue*, *etc*.

Second, with respect to the Seventh Circuit, Zilm takes issue with the resolution of *Long*. It seems odd to suggest that the lesson from the Supreme Court in *Napue*, *Mooney* and *Pyle* is that the State is allowed to coerce witnesses and use perjured testimony to convict as long as everyone knows about it. This appears to Zilm to peel the onion too thin. The constitutional principle is Due Process, which equates to fundamental fairness in the conduct of state actors as the chief concern. When those state actors fail to uphold their end, this is when the Constitution is violated. The fact that they got caught should not somehow be used as a legal shield in the manner the State is trying to do here.

This is a case where the State is responsible for the false version it initially created, then used that false version at trial to impeach a minor. This is not some extension of *Napue*, some unanswered ancillary constitutional question, or anything other than what *Napue* explicitly prohibits: a state prosecutor and other state agents manufacturing false testimony and then using to the State's benefit at trial.

4

If *Napue* stands for anything, it stands for that; and that is exactly what happened in Zilm's case. The Supreme Court has held that in evaluating *Napue* errors, courts apply a less demanding standard of review: whether "there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103 (1976); *accord United States v. Crockett*, 435 F.3d 1305, 1317 (10th Cir. 2006). This materiality standard is, in effect, a form of harmless error review, but a far lesser showing of harm is required under *Napue's* materiality standard than under ordinary harmless error review. *See Smith v. Phillips*, 455 U.S. 209, 220 n.10, (1982) (describing the "materiality requirement" that applies to *Napue* and *Giglio* claims).

The State also makes an odd claim that Zilm somehow is asserting that State actors coerced testimony from K.A. but that the testimony is not false. State Response at 23. To be clear, the claim made by Zilm at all levels of the prosecution was that the coerced testimony by K.A. implicating Zilm in criminal conduct is false. K.A. says it is false, and the record shows why.

Zilm reminds this Court that the record is clear that DHS case worker **Lauren Hall**, forensic examiner **Amy Howard**, juvenile case agent **Lori Hannagan**, and prosecutor **Sarah McAmis** were all guilty of either manipulating K.A. and her testimony by either lying to her outright about the evidence in the case, or coercing

5

K.A. to change her testimony with threats of taking her away from her mother–and that prosecutor Sarah McAmis was particularly culpable because she knew about the recantation, failed to mention anything about it at, or prior to, the first preliminary examination, obtained inculpatory testimony form K.A. at that first preliminary examination knowing it to be false, and then proceeded to use that tainted testimony to impeach K.A. at trial.

And the Court will recall that it is the preliminary hearing testimony of K.A. that is suspect here. As Zilm has shown, that testimony was manipulated by the four named State actors in two primary ways.

First, they all *knew* about the recantation but did not say anything about it to the defense or the court prior to the preliminary hearing. This is a *Napue* error on its face. Remember, K.A. recanted almost immediately after the incident on June 4, 2012, within a day or two; and a preliminary examination was set before Judge Youll on September 26, 2012.

During this time period, we know that DHS case worker Lauren Hall knew about K.A.'s recantation because she was caught on tape lying to K.A. about the DNA evidence. O.R. 304; Defense Exhibit #1 (the recording).

We know that DHS worker Lori Hannagan knew about it because she wrote it down in an official document in the juvenile file. O.R. 303.

6

We know that the forensic examiner from the juvenile center Amy Howard knew about it because K.A. testified that she did, she had access to K.A., and K.A. testified directly that Howard told her that if she stuck to her recantation then K.A. may not be returned to her mother. O.R. 304; O.R. 172-73 (Amy "told me to say what I said before and I'd get to go back to my mom and live with her again.")

We also know that prosecutor Sarah McAmis knew about the recantation because she had access to all of these State witnesses and resources by virtue of her office and authority as a prosecutor, to K.A., the juvenile file, and K.A. testified under oath directly at trial, in response to questioning by McAmis herself, and a second time at a pre-trial hearing, that McAmis told her that she must tell the first story (implicating Zilm) rather than the recantation so that she could go back and live with her mom. Tr. 09/09/2014 122-23, 124; Tr. II 284-85.

So, with the approaching preliminary examination before Judge Youll coming up on September 26, 2012, Zilm again poses the question to this Court: what did prosecutor Sarah McAmis, Amy Howard, Lori Hannagan, and Lauren Hall do, knowing that K.A. recanted?

They did nothing. They let K.A. testify under oath at the first preliminary examination that Zilm had sodomized her without informing the trial court or defense counsel that K.A. had actually refuted that testimony, on multiple occasions, and still

did (and with knowledge that the DNA evidence supported Zilm, not the original complaint of K.A.). P.H. Tr. 09/26/2012 at 24-25 (testimony of K.A. at first preliminary examination).

As Zilm has pointed out, had the situation remained this way through trial, Zilm would be presenting this issue as a *Brady* claim. However, defense counsel found out about the recantation by K.A., brought it to the attention of the trial court, and the trial court issued an order remanding for a new preliminary examination specifically because State actors had used "unreasonable influence on the minor child K.A. to secure testimony to which she had since recanted repeatedly." O.R. 339.

Zilm points out to this Court, however, that as bad a *simply not divulging* the recantation is, much worse is using lies and coercion on K.A. to dissuade her from even mentioning it during her testimony. This is what all four of these State actors did, and in Zilm's view their actions can fairly be construed as suborning perjury and witness manipulation of an 11-year-old girl to present false testimony.

In addition to not disclosing the recantation, Lauren Hall was caught on tape lying to K.A. about the DNA evidence and telling K.A. that no one would believe her recantation because the DNA evidence proved the first story; Amy Howard pressured K.A. to testify to the first story by telling K.A. that if she recanted then she might not be given back to her mother; Lori Hannagan told K.A. to just blame the recantation

8

on her mother, as if it was the mother's idea and not K.A.'s true belief (to simply fabricate evidence, in other words); and prosecutor Sarah McAmis told K.A. that if she stuck to her original story implicating Zilm then K.A. could go back and live with her mother.

This is why K.A. testified the way she did at the first preliminary examination; and Judge Glassco held as much in his Order when he found unreasonable influence has been exerted by State actors, declared the first preliminary examination a nullity, and then remanded the matter for a new one.

At trial, the State then used the testimony that it had coerced and fabricated to impeach K.A. In Zilm's view, this is what happened. It is what the record shows. It is a mode of prosecution by the State that cannot be reconciled with the Constitution.

The OCCA dismissed all of this evidence in the record–the recantation under oath, the recordings of coercion, the findings by the magistrate of State coercion–on the basis that the testimony complained of (the initial false story of K.A.) was not shown to be false. Zilm asserts that this holding is both contrary to and an unreasonable application of clearly established federal law and the undisputed facts.

The State asserts that the holding of the OCCA is not unreasonable, and that a fairminded jurist could agree with the conclusion of the OCCA that Zilm had failed

to show that the initial allegations by K.A. against Zilm were false. State Response at 27. The State doubles down on its assertion that allegations made by K.A. even if coerced, were not shown to be false. *Id*.

The State then goes through the four named State actors and catalogues their excuses for their behavior (they made a mistake or honestly thought the DNA evidence supported K.A.) or outright denials of any misconduct in the case of prosecutor McAmis. However, the State's analysis boils down to the fact that it believes Zilm to be guilty and disbelieves any statement by K.A. to the contrary.

This should be a simple claim. The State coerced K.A. to testify under oath at the preliminary hearing to things that were not true. How do we know that they were not true? Because K.A. has told us, repeatedly and under oath and to this day. The fact that the State has an interest in preserving the conviction that it obtained against Zilm based upon the coerced testimony that it extracted from K.A. does not absolve this Court of the duty of recognizing what occurred here and administering justice to wayward Stat actors who violated fundamental notions of Due Process in order to obtain the conviction.

WHEREFORE, Adam Clayton Zilm, prays that the Court grant him the relief to which he may be entitled in this proceeding.

Respectfully submitted,


*/s/ James L. Hankins*
James L. Hankins, OBA #15506
MON ABRI BUSINESS CENTER
2524 N. Broadway
Edmond, Oklahoma 73034
Telephone:  (405) 753-4150
Facsimile:  (405) 445-4956
E-mail:       jameshankins@ocdw.com

*Counsel for Petitioner*


**CERTIFICATE OF SERVICE**

This is to certify that on this 21st day of April, 2021, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing. Based on the records currently in the file, the Clerk of the Court will transmit a Notice of Electronic filing to the following ECF Registrant:

Caroline E.J. Hunt
e-mail:       fhc.docket@oag.state.ok.us


*/s/ James L. Hankins*
James L. Hankins

11